

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed April 16, 2019**                                               **United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | CASE NO. 17-30465-BJH |
| § | |
| JOHN WILEY BRYANT and JANET § | (Chapter 11) |
| ELIZABETH BRYANT *f/k/a* JANET § | |
| ELIZABETH WATTS, § | Related to ECF No. 35 |
| § | |
| Debtors. § | |

## MEMORANDUM OPINION OVERRULING OBJECTION TO CLAIM NO. 8

Debtors John Wiley Bryant and Janet Elizabeth Bryant (the "**Debtors**") object[1] to Claim No. 8 filed by Franklin Credit Management Corporation ("**Franklin**"), as servicer, on behalf of Bosco Credit II Trust Series 2010-1 ("**Bosco**"). This Memorandum Opinion comprises the court's finding of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014(c).[2]

---

[1] Amended Objection to Claim of Bosco Credit II Trust Series 2010-1 c/o Franklin Credit Management Corporation [ECF No. 35] (the "**Objection**").

[2] Neither party ordered a transcript. Citations to testimony will take the form: Audio Hr'g Tr. at [time] – [time].

## I.  Jurisdiction

The court has jurisdiction over the Objection under 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## II.  Factual and Procedural History

The Debtors signed a promissory note for $99,590.02 (the "**Note**")[3] in favor of Certified Funding Corporation ("**CFC**"), securing the obligation with a lien[4] on their homestead at 5915 Swiss Avenue, Dallas, Texas (the "**Property**").  The Debtors filed chapter 11 in February 2017 to prevent foreclosure after they fell behind on their mortgage payments.[5]

The Debtors objected to claim No. 8-1 filed by Franklin, as servicer, on behalf of Bosco for $157,518.33 based on the Note and Deed of Trust (the "**Claim**").  The Debtors' objection at first cited seven grounds for disallowing the Claim; but they withdrew all but four in their post-hearing brief.  The remaining objections are that: (1) Bosco failed to prove it owns and is entitled to enforce the Note; (2) Bosco failed to prove it holds a security interest in the Property; (3) Franklin did not establish its authority to act on Bosco's behalf; and (4) Bosco failed to prove its claim for postpetition interest and attorneys' fees.

## III.  Legal Analysis

### A.  The Debtors Failed to Rebut the Presumption of the Claim's Prima Facie Validity

A proof of claim filed in accordance with Bankruptcy Rule 3001 is "prima facie evidence of the validity and amount of the claim."[6]  This prima facie validity may be rebutted by the objecting party producing evidence "of a probative force equal to that of the creditor's proof of

---

[3] Bosco Ex. 1 (August 20, 1999 Note).  Bosco Ex. 1 comprises several documents but only the Note was admitted into evidence.
[4] Bosco Ex. 2 (Deed of Trust).
[5] Objection [ECF No. 35] ¶ 3.
[6] FED. R. BANKR. P. 3001(f); *see In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).

claim."[7]  Once an objecting party produces evidence rebutting a proof of claim, the burden then lies with whichever party it would normally, according to the relevant substantive law.[8]

The Debtors wisely abandoned their initial contention that the Claim was not entitled to prima facie validity because it did not comply with Local Bankruptcy Rule (L.B.R.) 3001-1.[9]  The Claim satisfies Bankruptcy Rule 3001 and L.B.R. 3001-1 because it: (1) conforms substantially to the official form; (2) was executed by an attorney representing Franklin, the authorized servicer of the Debtors' loan; (3) includes an accurate Form 410A calculation; (4) includes a copy of the Note and allonges negotiating the Note to Bosco from CFC, the original lender, including an indorsement in blank; and (5) attaches the Deed of Trust and assignments of the Deed of Trust from CFC down to Bosco.

The Debtors' case-in-chief consisted principally of Mr. Bryant's testimony that he did not agree with the Claim calculation (without giving any specific reasons for his disagreement); and his counsel's unsuccessful attempt to discredit the calculation.  But the Debtors failed to produce any evidence having a probative force equal to that of the Claim sufficient to defeat the presumption of validity of the Claim.  Hence the Claim is entitled to the presumption of prima facie validity and is allowed as filed.[10]

---

[7] *In re Fidelity Holding*, 837 F.2d at 698; *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985); *see Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054, 1059 (5th Cir. 1998).

[8] *See In re 1701 Commerce*, *LLC*, 511 B.R. 812, 822 (Bankr. N.D. Tex. 2014); *In re Aviva America, Inc.*, 2005 WL 6441404, at *3-4 (Bankr. N.D. Tex. June 21, 2005) (quoting *In re Armstrong*, 320 B.R. 97, 102-03 (Bankr. N.D. Tex. 2005)).

[9] Debtors' Post-Hearing Brief [ECF No. 145] ¶ 1 (Debtors here by withdraw that portion of their Claim Objection set forth in Paragraphs … 11 (lack of compliance with L.B.R. 3001-1)).

[10] The court declined to grant an oral motion to overrule the Objection for failure to rebut the Claim's presumption of prima facie validity at the close of the Debtors' case-in-chief, preferring to hear evidence from both sides.  The full record shows that that the Debtors failed to rebut the presumption.

**Memorandum Opinion**                                                                                                                            **3**

### B.  Alternatively, Bosco is Entitled to Enforce the Note as a Nonholder in Possession

Even assuming – without finding – that the Debtors produced sufficient evidence to rebut the presumption of prima facie validity by successfully excluding the allonges/indorsements from the record, Bosco met its burden of showing its right to enforce the Note as a nonholder in possession.

The Debtors argue for disallowance because Bosco failed to prove that it "owns" the Note.[11]  To recover under the Note, Bosco had to establish only that: (1) the Note exists, (2) the Debtors signed the Note, (3) Bosco is the owner or holder of the Note and (4) a balance is due and owing on the Note.[12]

Bosco's evidence satisfied the first, second and fourth requirements.  Its counsel produced for inspection the original Note signed by the Debtors.[13]  Evidence of the balance owed on the debt included the loan history;[14] Gina D'Elia's testimony regarding Franklin's servicing of the Debtors' loan and the Note's outstanding balance;[15] and Jessica Holt's testimony regarding the preparation of Official Form 410A calculating the Claim.[16]  Neither Mr. Bryant's testimony that he did not

---

[11]  Objection [ECF No. 35] ¶ 5 ("Bosco has not provided any documentation with the Claim to verify that Bosco is the present owner of any debt…."); Debtors' Post-Hearing Brief [ECF No. 145] ¶ 11 ("Bosco did not establish that it was the owner of the debt evidenced by the Bryant Note….").

[12]  *SGK Properties, L.L.C. v. U.S. Bank N.A.*, 881 F.3d 933, 941 (5th Cir. 2018) (citing *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App. 2012, no pet.)).

[13]  A true and correct copy of the Note was admitted into evidence as Bosco Ex. 1 (Note).

[14]  Bosco Ex. 11 (Loan History Summary).

[15]  Ms. D'Elia has been employed by Franklin for nearly five years and currently serves as a bankruptcy department manager.  She credibly testified that Franklin services mortgage loans for various investors, including Bosco.  Hr'g Audio Tr. 10:00:45-10:01:40.  She also credibly testified regarding the loan history, the Debtors' payment history, late charges and similar matters, including the data entry process regarding the loan and the reports generated from that process.  *Id.* at 11:37:58-12:09:30.

[16]  Ms. Holt is an attorney with Mackie Wolf Zientz & Mann, P.C., Franklin's counsel in this case.  Hr'g Audio Tr. 9:28:50-9:29:25.  She credibly testified regarding the steps taken to prepare the Claim and the source of the information used to prepare the Claim.  *Id.* at 9:35:20-9:41:55, 12:13:39-12:26:00.  *See* Bosco Ex. 8 (Form 410A).  Official Form 410A, titled Mortgage Proof of Claim Attachment, is a standardized form used in individual bankruptcy cases by a creditor claiming a security interest in the debtor's principal residence that gives detailed information about the creditor's calculation of the claim.

agree with the amount of the Claim nor his counsel's attempts to undermine D'Elia's and Holt's testimony on cross-examination overcame Bosco's evidence on these three factors.

However, Bosco still had the burden of proving that it was entitled to enforce the Note. Texas law provides that persons entitled to enforce a note include:[17]

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Only options (i) and (ii) are relevant here.

The first avenue of enforcement is attaining the status of "holder," defined as "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession."[18] For instruments made "payable to an identified person," that person becomes a holder by negotiation through a "transfer of possession of the instrument and its indorsement by the holder."[19] For the indorsement to be legally acceptable, it "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it," such as a firmly affixed allonge.[20] A person who is not the original holder cannot attain the status of holder by negotiation if the instrument lacks a written indorsement and proof of the chain of title.[21]

Attached to the Claim are copies of the Debtors' Note in favor of CFC; an indorsement of the Note from CFC to Bank One, N.A.; and Bank One, N.A.'s indorsement in blank. Bosco did not prove the chain of title from CFC at the hearing because it did not overcome a gap in the chain

---

[17] TEX. BUS. & COM. CODE § 3.301.
[18] *Id.* § 1.201(b)(21)(A).
[19] *Id.* § 3.201(b).
[20] *Skelton v. Urban Trust Bank*, 516 B.R. 396, 402 (N. D. Tex. 2014) (citing cases).
[21] *Id.*

**Memorandum Opinion**    **5**

when the allonges were excluded as hearsay. As a result, Bosco has failed to prove it is the holder of the Note.

But a note may be transferred even if the transferor has not indorsed it. In that case, the transferee acquires whatever rights the transferor had in the note, though it does not become the holder. Tex. Bus. & Com. Code § 3.203 states that:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
>
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course.

As the Report of the Permanent Editorial Board for the Uniform Commercial Code, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes 6 (2011) explains:[22]

> Thus, the failure to obtain the indorsement of the payee does not prevent a person in possession of the note from being the person entitled to enforce it, but demonstrating that status is more difficult. This is because the person in possession of the note must also demonstrate the purpose of the delivery of the note to it in order to qualify as the person entitled to enforce.

If an instrument without indorsement is transferred for the purpose of giving the recipient the right to enforce the instrument, the recipient becomes "a nonholder in possession of the instrument who has the rights of a holder" and therefore can enforce it.[23] A note may be transferred repeatedly

---

[22] *See Skelton v. Urban Trust Bank*, 2013 WL 4009651, at *5 (Bankr. N.D. Tex. Aug. 5, 2013).

[23] TEX. BUS. & COM. CODE § 3.301; *see also Martin*, 377 S.W.3d at 84 ("Nevertheless, under common-law principles of assignment, a party who fails to qualify as a "holder" for lack of an indorsement may still prove that it owns the note."); *Bittinger v. Wells Fargo Bank NA*, 2011 WL 5415664, at *8 (S.D. Tex. Nov. 8, 2011) ("Texas law makes clear that a party does not have to be a holder to enforce an instrument.").

without indorsement as long as each transfer was made in accordance with § 3.203.[24] That condition may be proven through testimony, as Bosco did at the hearing.[25]

The evidence established that Bosco is a nonholder in possession. Counsel produced the original Note for inspection at the hearing, conclusively establishing Bosco's possession. Bosco also proved the purpose for which the Note was delivered to it through the Debtors' Loan Modification Agreement, which states in relevant part that:[26]

> This Loan Modification Agreement ("Agreement") made November 10, 2008 between John W[.] Bryant & Janet Bryant ("Borrowers") and Franklin Credit Management Corporation ("Lender") amends and supplements one certain promissory note ("Note") in the principal amount of Ninety Nine Thousand Five Hundred Ninety and 00/100 Dollars ($99,590.00) executed by Bank One,[27] and subsequently sold to Franklin Credit Management Corporation, in accordance with the terms set forth therein. Borrowers, if not presently primarily liable for payment of the Note, do[] hereby expressly assume the payment of said Note. *Borrowers acknowledge[] and the Lender represents that Lender is the holder and owner of the Note* and understands that the Lender may transfer the Note, as amended by this agreement…. The Note is secured by a Deed/Mortgage (the "Security Instrument") within the real property records of Dallas County, Texas. Said Security Instrument conveys the real and personal property described in such Security Instrument (the "Property") located at 5915 Swiss Avenue, Dallas, TX 75214.
>
> \*\*\*
>
> As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrowers acknowledge and reaffirm Borrowers' liability to Lender thereunder. … *Any default by Borrowers in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Agreement.*

---

[24] *Skelton*, 516 B.R. at 404-05 ("Texas law permits Urban Trust to establish entitlement through sequential § 3.203 transfers, regardless of whether those transfers have been properly indorsed.").

[25] *Id.* at 405 (citing cases).

[26] Bosco Ex. 8 (November 10, 2008 Loan Modification Agreement) at 1, 3-4 (emphasis added).

[27] The Loan Modification Agreement incorrectly lists the initial lender as Bank One, when it was CFC. *Compare* Bosco Exs. 1 (Note) *with* Ex. 8 (Loan Modification Agreement). With this exception, the Loan Modification accurately describes the Note.

**Memorandum Opinion** 7

The Debtors unambiguously acknowledged on November 10, 2008 that Franklin was entitled to enforce the Note. And, as Ms. D'Elia testified, Franklin is Bosco's authorized servicer of the Debtors' loan and it is Franklin's practice to sign loan modifications when acting as servicer for an investor such as Bosco.[28] The Debtors produced nothing to refute this evidence.

Thus, Bosco carried its burden of proving that it is entitled enforce the Note as a nonholder in possession. The burden then shifted back to the Debtors, who provided no evidence in rebuttal.

    C.    **The Deed of Trust Secures Bosco's Claim**

The Debtors next object that even if Bosco holds a claim, it has failed to prove that the Deed of Trust secures the claim.

The Texas Property Code recognizes that a "mortgagee" has standing to enforce a deed of trust.[29] The term *mortgagee* includes the owner or holder of a security instrument such as a deed of trust, or, "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."[30]

The evidence established that the Debtors signed a Deed of Trust in favor of CFC that was recorded in the Dallas County real property records on September 3, 1999.[31] The evidence traced ownership of the Deed of Trust from its inception until its eventual assignment to Bosco, starting with CFC's assignment of the Deed of Trust to Bank One, N.A. by an assignment recorded in the Dallas County real property records on January 16, 2002.[32] Bank One, N.A. then assigned the Deed of Trust to Franklin, with the assignment filed in the Dallas County real property records on

---

[28] Hr'g Audio Tr. 10:33:30-10:34:32.
[29] *See* TEX. PROP. CODE §§ 51.002, 51.0025.
[30] *Id.* § 51.0001(4), (6).
[31] Bosco Ex. 2 (August 20, 1999 Deed of Trust).
[32] Bosco Ex. 3 (January 3, 2002 Corporation Assignment of Deed of Trust).

December 9, 2004.[33] Finally, Franklin assigned the Deed of Trust to Huntington National Bank, as Certificate Trustee of Franklin Mortgage Asset Trust 2009-A. Huntington immediately assigned its interest to Bosco, with both assignments being recorded in the Dallas County real property records on March 14, 2014.[34]

The Debtors offered nothing to refute this evidence yet still contend that Bosco cannot enforce the lien "because the debt to be secured by these claimed liens is not the debt submitted with the Claim—*i.e.,* the Bryant Note."[35] The Debtors apparently are making a "split-the-note" objection, arguing "that a transfer of a deed of trust ... 'splits' the note from the deed of trust, thus rendering both null."[36] The Fifth Circuit has rejected this theory.[37]

Alternatively, if the Debtors are arguing that Bosco's claim arises from the Loan Modification Agreement rather than the Note itself, their argument is merely a restatement of a split-the-note objection. The argument is also inconsistent with the Loan Modification Agreement, in which the Debtors acknowledged that Franklin was the "holder and owner of the Note;" that the Note was secured by the Deed of Trust; and that, except as the agreement expressly modified the parties' understanding, the Note and Deed of Trust remained in full force and effect.[38]

Accordingly, Bosco is a mortgagee with standing to enforce the Deed of Trust.

### D. Franklin, as Servicer, Had Authority to File the Claim on Bosco's Behalf

The Debtors next argue that the Claim must be disallowed because it was signed by Franklin's lawyer, who lacked authority to file a claim on Bosco's behalf.

---

[33] Bosco Ex. 4 (November 30, 2004 Assignment of Mortgage).

[34] Bosco Exs. 5 and 6 (March 11, 2014 Assignments of Deed of Trust).

[35] Debtors' Post-Hearing Brief [ECF No. 145] ¶ 20.

[36] *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013).

[37] *Martins*, 722 F.3d at 255 ("The party to foreclose need not possess the note itself.").

[38] Bosco Ex. 8 (Loan Modification Agreement) at 1, 3-4. As previously established, although a representative of Franklin signed the Loan Modification Agreement, Franklin did so in its capacity as Bosco's authorized servicer.

Jessica Holt of Mackie Wolf Zientz & Mann, P.C., a member of the Texas bar, signed the Claim. Ms. Holt testified that Mackie Wolf serves as Franklin's legal counsel in this case. Ms. D'Elia then testified that Bosco authorized Franklin to service the Debtors' loan and also to file the Claim on Bosco's behalf.[39] The Debtors introduced no evidence to refute this testimony.

### E. The Debtors' Objection to Postpetition Interest and Attorneys' Fees is Premature

Finally, the Debtors argue that Bosco has failed to support its claim for postpetition interest and attorneys' fees. This objection is premature because the Claim requests payment only of prepetition amounts owed on the Note. A review of the docket shows that Bosco has not filed a motion for allowance of postpetition attorneys' fees under 11 U.S.C. § 506(b).[40] Accordingly, this portion of the Objection is not ripe for ruling.[41]

For the foregoing reasons, the Objection is overruled in its entirety and the Claim is allowed as filed. Franklin's counsel is directed to prepare a form of order, circulate it to opposing counsel for review, and upload it within 14 days of entry of this Memorandum Opinion. If the parties are unable to agree to a form of order, each party shall provide to the Courtroom Deputy its preferred from of order with an explanation of why its proposed form is proper.

### # # # END OF MEMORANDUM OPINION # # #

---

[39] *See also Guley v. Countrywide Home Loans, Inc. (In re Gulley)*, 436 B.R. 878, 892 (Bankr. N.D. Tex. 2010) ("Thus, there is not a per se rule prohibiting Countrywide, as a servicer, from participating in Mr. Gulley's bankruptcy case and ultimately, filing a proof of claim. Likewise, the court does not think that Countrywide, as the servicer of the Note, would be required to prove that it was JPMorgan's agent in order to file a proof of claim.").

[40] "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

[41] This Memorandum Opinion is without prejudice to Bosco's or Franklin's rights, if any, to seek payment of postpetition amounts owing under the Note or Deed of Trust or the Debtors' objections and defenses thereto.